FILED

2023 Jan-30  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| TUSCALOOSA HYUNDAI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 7-21-CV-571-LSC |
| | ) | |
| HYUNDAI MOTOR AMERICA, INC., and | ) | |
| GENESIS MOTOR AMERICA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

In this case about incentive programs, Tuscaloosa Hyundai incorrectly conflates its failure to earn extra money with penalties for non-compliance.  Defendants are not punishing Tuscaloosa Hyundai by offering these incentives; rather, they are encouraging all dealers to invest in exclusive representation for both the Hyundai and Genesis brands.  While Tuscaloosa Hyundai speculates that the real motive is to drive Genesis dealers out of business, it cannot dispute that the programs serve legitimate goals, such as increasing brand focus and capacity and competing with competitive brands (such as Lexus, Toyota, and Mercedes-Benz) that have higher shares of exclusive dealerships.

Tuscaloosa Hyundai accuses Defendants of not telling the whole story, but Defendants appropriately focus only on the material facts.  Those facts, still undisputed, are fatal to Tuscaloosa Hyundai's claims. First, Accelerate, Keystone, and Brand Ambassador are not "coercive" because they are voluntary and designed only to persuade.  Second, Defendants' actions in striving for exclusive facilities are not "arbitrary, unreasonable, unconscionable, or not in good faith" because they are based on legitimate business goals that Tuscaloosa Hyundai does not contest.  Third, the programs do not create any actionable "price discrimination" because Tuscaloosa Hyundai was offered the same programs, on the same terms, and under the same rules as all Hyundai and Genesis dealers in Alabama.  Summary judgment is due to be granted in Defendants' favor.

1

## RESPONSE TO PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

1-3.   Undisputed.

4.      Immaterial.  An email from November 2015 could not possibly predict how circumstances would change when the Accelerate, Keystone and Brand Ambassador programs were launched in 2020 and 2021.

5.      Undisputed except as to the date of the announcement, which the parties agree was made in 2018.  (Dkt. 22, Stmt. of Undisputed Material Facts ⁋ 9.)

6.      Immaterial.  Tuscaloosa Hyundai was offered – and accepted – the opportunity to become a franchised Genesis dealer at its current location, and Tuscaloosa Hyundai continues to sell and service Hyundai and Genesis vehicles from its shared dealership facility.  (Defendants' Statement of Undisputed Material Facts ("Defs.' SUMF"), Dkt. 26 ⁋⁋ 3, 9, 16.)   Moreover, at the time Tuscaloosa Hyundai built its facility, it did not have a Genesis franchise.  (*Id*. ⁋⁋ 12-14.)

7-11.  Immaterial for the reasons explained in ⁋ 6 above.

12.     Immaterial for the reasons explained in ⁋ 6 above and because (i) the plan described in this communication was ultimately abandoned by GMA, and (ii) Defendants offered all existing Hyundai dealers the opportunity to become Genesis dealers at their existing Hyundai dealership locations.  (Defs.' SUMF ⁋ 14.)

13-15. Immaterial for the reasons explained in ⁋ 12 above.

16.    Immaterial for the reasons explained in ⁋ 12 above.  In addition, the statement is misleading because there were no "existing Genesis dealers" in March 2018.  The statement is also unsupported in the record.  As GMA's corporate representative explained at his deposition, "there was never a plan not to award [a Genesis dealership] in Alabama." (Dkt. 30-5, Hernandez Dep. 100:10-101:21.)  The March 2018 announcement simply referred to the markets where GMA wished to have representation at the launch of the new line-make.  (*Id.*)  GMA planned to grow the dealer network over time and expand to other markets, including Alabama.  (*Id.*)

17-19.    Immaterial and unsupported for the reasons explained in ⁋ 16 above.

20.    Immaterial for the reasons explained in ⁋ 12 above.

21.    Undisputed as to the fact that Defendants offered all existing Hyundai dealers the opportunity to become Genesis dealers, but unsupported to the extent the statement suggests that GMA had a plan to "reduce the size of its dealer network" prior to May 2018.  At the point, there were no Genesis dealers and there was no Genesis dealer network.  (Dkt. 30-5, Hernandez Dep. 66:8-69:5.)

22-27.    Undisputed.

28.    Undisputed that Tuscaloosa Hyundai quotes from the Genesis Facility Exclusivity Policy, but denied that Tuscaloosa Hyundai is not "permitted" to operate its Hyundai and Genesis dealerships at its combined facility.  It is undisputed that Tuscaloosa Hyundai has been permitted to operate in such a facility.  However,

because Tuscaloosa Hyundai does not have an exclusive Hyundai or Genesis facility, it does not qualify for certain incentives under the Accelerate, Keystone and Brand Ambassador programs.  (Defs.' SUMF ¶¶ 42-47; Dkt. 30-16, Kim Dep. 102:17-23.)

29.    Undisputed that Tuscaloosa Hyundai has been given a planning guide of 273 Genesis vehicles, but denied that Tuscaloosa Hyundai is not "permitted" to continue operating its Hyundai and Genesis dealerships at its combined facility, for the reasons explained in response to ¶ 28 above.

30.    Undisputed.

31.    Undisputed that Defendants do not require, threaten or coerce dealers to comply with their facilities policies.

32-33. Immaterial for the reasons explained on pages 7 to 8 and at n. 3 below.

34.    Immaterial for the reasons cited above (p. 7-8, n.3), and unsupported by the cited testimony, which does not reference a reduction in invoice prices. In fact, no program reduces the actual *invoice price* a dealer pays. (*See* Dkt. 27-6, ¶ 9.)

35-38. Undisputed.

39.    Undisputed that Mr. Grafton explained during the February 2021 meeting that Defendants could not approve Tuscaloosa Hyundai's variance, but denied that he spoke about GMA's "plans" at the time Tuscaloosa Hyundai built its facility.  GMA did not exist as a company at that point.  (Dkt. 30-32, at 18:8-22.)

40.    Undisputed.

41.     Immaterial and misleading.  The portion of Mr. Whitt's deposition cited by Tuscaloosa Hyundai does not concern its request for a variance to the requirements of the Accelerate, Keystone, or Brand Ambassador programs, which are the only programs at issue in this case.  Moreover, it is undisputed Tuscaloosa Hyundai has been permitted "to continue operating with Hyundai and Genesis in the same facility." (Defs.' SUMF ¶¶ 42; Dkt. 30-16, Kim Dep. 102:17-23.)[1]

## ARGUMENT

### A.     Persuasion is Not Coercion.

Tuscaloosa Hyundai does not dispute that it must establish coercion or attempted coercion to prove its six claims under Ala. Code § 8-20-4(1).  Nor does it dispute that "recommendation, persuasion, urging, or argument" are excepted from the statutory definition of coercion.  *See* Ala. Code § 8-20-3(1).  While Tuscaloosa Hyundai spends much of its opposition discussing Defendants' supposed motivations, that issue is irrelevant to the main issue at hand—whether Defendants qualify for the exception because they only employed tactics that Tuscaloosa Hyundai "is free to reject."  *Long-Lewis Sterling W. Star of Bessemer v. Sterling Truck Corp.* ("*Long-Lewis Sterling*"), 2011 WL 13175827, at *10 (N.D. Ala. Mar.

---

[1] Tuscaloosa Hyundai's "Additional Disputed Facts" are immaterial to the resolution of this Motion for reasons explained herein.  Among other deficiencies, Tuscaloosa Hyundai's allegations regarding alleged "viability concerns surrounding exclusive Genesis dealerships" are contradicted by the sworn testimony from its own corporate representative, Brooke Meissner, who admitted that "there's enough opportunity to support a stand-alone adaptive exclusive Genesis dealership in Tuscaloosa, Alabama."  (Dkt. 27-3, Meissner Dep. 161:1-6.)

31, 2011), *aff'd*, 460 F. App'x 819 (11th Cir. 2012). The undisputed material facts establish that the exception applies:

1. Accelerate, Keystone, and Brand Ambassador are voluntary programs and Tuscaloosa Hyundai is not required to participate. (Defs.' SUMF ⁋ 41 and 42).

2. The programs are an attempt by Defendants to persuade dealers to build exclusive Hyundai and Genesis facilities. (*Id.*, ⁋ 43).

3. Defendants have never threatened Tuscaloosa Hyundai for refusing to comply with the exclusivity policies, nor made any other demand accompanied by a threat. (*Id.*, ⁋ 51).

Tuscaloosa Hyundai contends—with no supporting legal authority—that Defendants' "enforcement of its exclusivity policies is not merely recommendation, persuasion, urging, or argument, but the enforcement of illegal facility policies, on threat of significant economic penalties." (Opp'n at 24). This misses the point on many levels.

*First*, Tuscaloosa Hyundai's argument begs the question. A facility policy is only "illegal" if it is coercive. In the absence of coercion, nothing in the AMVFA prohibits distributors from encouraging dealers to provide exclusive dealerships or to make renovations to their dealerships within ten years of a prior renovation. Tuscaloosa Hyundai cannot simply label Defendants' policies "illegal" and then rely on that label to establish coercion.[2]

---

[2] This point also defeats Tuscaloosa Hyundai's attempt to distinguish *Long-Lewis Sterling*. (Opp'n at 24). No "underlying illegal conduct" distinguishes this case from the voluntary incentive programs at issue there, and just like that dealer, Tuscaloosa Hyundai remains free to reject each program Defendants offer. 2011 WL 13175827 at *10.

*Second*, mischaracterizing the offering of financial incentives as "enforcement" does not change the undisputed facts that the programs are voluntary and designed to persuade dealers to provide exclusive representation. (Defs.' SUMF ¶¶ 41-43). Tuscaloosa Hyundai attempts to create a fact issue by pointing to Defendants' respective facility usage policies, which have language stating that exclusive, branded facilities are required. (Opp'n at 20-22, 24). This argument loses sight of the fact that this case is *only about incentives*. These policies are incorporated into the program rules for Accelerate, Keystone and Brand Ambassador and compliance is only required to qualify for the incentives. (Dkt. 27-8 at HMA00258; Dkt. 27-11 at HMA00407; Dkt. 27-13 at HMA01802). As Tuscaloosa Hyundai knows, it is allowed to maintain its franchises in a shared facility, as it has for the two years since the facility usage policies were announced. (*See* Dkt. 30-16, Kim Dep. 102:17-103:8).

*Third*, the "significant economic penalties" that Tuscaloosa Hyundai references are not "penalties" at all. A penalty implies that Defendants are taking away something to which Tuscaloosa Hyundai is entitled, which the undisputed evidence establishes is not the case. No dealer is entitled to incentive money, as that would undermine the purpose of an incentive. While Tuscaloosa Hyundai stresses that it received prior incentives from Defendants, it ignores the undisputed fact that Defendants are not obligated under their dealer agreements or otherwise to

offer incentives to dealers, or to refrain from changing their incentives in response to changing market conditions.[3]   Indeed, as Tuscaloosa Hyundai's own expert admitted, motor vehicle distributors commonly "modify, adjust, clarify, expand, or reduce their incentive programs."  (Dkt. 30-2, Anderson Dep. 41:7-42:25).

Tuscaloosa Hyundai's attempt to distinguish *Cabriolet Porsche Audi, Inc. v. Am. Honda Motor Co.*, 773 F.2d 1193 (11th Cir. 1985), fails for this very reason. (*See* Opp'n at 25).  Just like the Honda distributor there, Defendants have not taken away or threatened to take away anything to which Tuscaloosa Hyundai is entitled. *Id.* at 1208.  The plaintiff there had to maintain an exclusive facility to receive extra inventory, and similarly, Tuscaloosa Hyundai must maintain exclusive facilities to earn extra support payments.  *Id.*

Tuscaloosa Hyundai also cannot raise a genuine issue that Defendants lacked "honesty in fact."  Defendants have at all times remained transparent with dealers regarding the facility aspects of Accelerate and Keystone.  The program rules are published and available to all, and Defendants have been upfront with dealers in providing information to inform their decisions on whether to participate in the programs.  (*See e.g.,* Dkt. 27-8 at HMA00263; Dkt. 27-11 at HMA00412-13).  There

---

[3] Nor are dealers entitled to any specific trading margin (the difference between wholesale and MSRP), which renders irrelevant the allegation that Defendants shifted margin from holdback and dealer cash programs to performance based incentives.   (Opp'n at 9,  ⁋⁋ 32-33).   In fact, Defendants' dealer agreements expressly provide them with the right to unilaterally set the wholesale price for vehicles.  (*See* Dkt. 27-2 at HMA00012, ⁋ 2).

is nothing dishonest about asking dealers to take a hard look at their Genesis business when deciding whether to move forward with an exclusive facility investment.

Lastly, there is no merit to Tuscaloosa Hyundai's argument that the programs impose "crushing economic sanctions," designed to make dealers like Tuscaloosa Hyundai "so unprofitable" that they are forced out of business. (Opp'n at 37). To the contrary, Tuscaloosa Hyundai has earned record profits for both franchises—to the tune of millions of dollars per year—that have increased significantly since the implementation of the programs it claims are so "crushing." (Dkt. 27-4, Buckner Dep. 220:4-221:3; Dkt. 30-24 at p. 88-89 (Table 13)).

## B.    Defendants Did Not Act In Bad Faith.

Tuscaloosa Hyundai ignores the cases Defendants cite holding that motor vehicle franchise statutes substantially similar to Ala. Code § 8-20-4(2) do not prohibit actions based on legitimate business considerations. *See, e.g., Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 63-64 (1st Cir. 1992); *Love Pontiac, Cadillac, Buick, GMC Truck, Inc. v. General Motors Corp.*, 1999 WL 125562, at *3 (4th Cir. 1999) (unpublished) ("*Love Pontiac*"). Defendants have provided evidence of legitimate business considerations supporting their decisions to (1) pay facility incentives only to dealers who provide exclusive representation for each brand, (2) apply the rules of their programs consistently, and (3) not make any special exceptions to those rules for Tuscaloosa Hyundai. (Dkt. 26 at 20-23).

Tuscaloosa Hyundai does not dispute that Defendants' decisions were motived by legitimate business considerations, which proves fatal to counts 5, 6, and 11.

### 1. An Unstated Motive Does Not Undermine Defendants' Undisputed Legitimate Business Considerations.

Instead of challenging Defendants' good faith business reasons, Tuscaloosa Hyundai focuses again on the notion that Defendants harbored a "concealed motive" to reduce the number of Genesis dealers, which it contends supports an inference of bad faith. Tuscaloosa Hyundai has no direct evidence of this supposed nefarious "motive," let alone any steps to conceal it. Indeed, Tuscaloosa Hyundai cannot even keep its own story straight. In its opposition, Tuscaloosa Hyundai both criticizes Defendants for "concealing" such motives (Opp'n at 1, 24, 28) and also for being "open" about the same "stated" goals. (*Id.* at 23, 36).

Viewing these alleged "facts" in the light most favorable to Tuscaloosa Hyundai, they at most support an inference of an unstated, secondary motive. However, the mere possibility that an unstated motive exists does not equate to bad faith when there is also a legitimate business reason for the decision. For instance, courts have recognized in the franchise termination context that a franchisor's "ulterior, improper motive" for termination, even if proven, "does not matter" and cannot overcome legitimate reasons justifying the termination. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998); *7-Eleven, Inc. v. Sodhi*, 2016 WL 3085897, at *5 (D.N.J. May 31, 2016) (finding an "ulterior motive" of racial

animus "irrelevant" where good cause existed for termination and insufficient to establish a breach of the duty of good faith and fair dealing).  The for-cause terminations in these cases are analogous to the situation presented here, where an action taken for good faith business reasons does not violate a franchise statute.

Even if a secondary motive were relevant to the inquiry, the one Tuscaloosa Hyundai identifies here—a desire to reduce the number of Genesis dealers over time—would still not create a genuine issue as to bad faith.  Tuscaloosa Hyundai simply assumes that this desire amounts to bad faith, but there is nothing inherently unlawful or dishonest about GMA recognizing that the market is oversaturated with Genesis dealers.  *See Chic Miller's Chevrolet, Inc. v. General Motors Corp.*, 352 F. Supp. 2d 251, 260 (D. Conn. 2005) (holding that a dealer's termination was justified despite claims of an ulterior motive because "a long term plan that called for reducing the number of dealerships in a possibly oversaturated market is not alone evidence of bad faith.").  Indeed, Tuscaloosa Hyundai's own evidence shows that even Genesis dealers think there are too many Genesis dealers.  (Dkt. 30-25 at p. 2).

**2.   Defendants' Actions Are Not Arbitrary, Unconscionable, or Unreasonable.**

Tuscaloosa Hyundai is also incorrect in arguing that an action based on legitimate business considerations could not be bad faith but still qualify as arbitrary, unreasonable, or unconscionable and thus violate § 8-20-4(2).  That interpretation cannot reconcile with the ordinary meaning of those terms.  *See Love Pontiac*, 1999

WL 125562, at *3 ("[B]y definition, an action which is based on a legitimate business rationale is not an arbitrary action.").  A decision that is justified by sound business reasons, like the ones Tuscaloosa Hyundai does not dispute here (Dkt. 26 at 20-23), does not satisfy even Tuscaloosa Hyundai's proposed definitions of arbitrary ("founded on prejudice or preference rather than on reason or fact"), unconscionable ("extreme unfairness"), and "unreasonable" ("not guided by reason; irrational or capricious"). This is why courts have adopted legitimate business considerations as the lodestar of the inquiry and held that actions backed by such considerations comply with the statute.  *See Schott*, 976 F.2d at 63-64; *Love Pontiac*, 1999 WL 125562, at *3.

Fundamental cannons of statutory construction support this view.  The canon *noscitur a sociis* holds that a "word is known by the company it keeps."  *PETA v. Miami Seaquarium*, 879 F.3d 1142, 1147 (11th Cir. 2018).  Thus, when a legislature strings together numerous, overlapping and sometimes even synonymous terms—as it has here—the canon is frequently applied to assign those words a related meaning based on the context.  *Id.*; *see also Ex Parte Cobb*, 703 So.2d 871, 876 (Ala. 1996). Here, the common thread is reasonable business judgment and each term should be read to embrace that concept.

Moreover, this is no merit to Tuscaloosa Hyundai assertions of arbitrary and unreasonable "vacillation" in Defendants' decision-making with respect to Genesis.

(Opp'n at 28).  First, it is undisputed that Tuscaloosa Hyundai ultimately received a Genesis franchise and has reaped substantial profits from operating that franchise at its current location.  (Defs.' SUMF ¶ 16; Dkt. 27-4, Buckner Dep. 220:4-221:3).  Second, the changes from prior policies only occurred after changed circumstances necessitated it—primarily, when Genesis became its own separate line-make in 2018.  (Defs.' SUMF ¶ 13).  Before then, Genesis could not have been separated from Hyundai because it was not its own franchise and did not have its own dealer network.  Now that Genesis is a standalone luxury franchise, encouraging separate facility investments by Genesis dealers is critical to the brand's success.  (*Id.*  ¶¶ 39-40).  Changing policies in the face of changed circumstances is rational—not arbitrary, unreasonable, or unconscionable.

## C.   There Is No Price Discrimination Because Tuscaloosa Hyundai Was Offered the Same Programs as Other Dealers.

Tuscaloosa Hyundai does not dispute the premise that incentives "offered" to all dealers of the same line make do not violate Ala. Code § 8-20-4(3)(g).  This is dispositive of Counts 7, 8, and 12, because Tuscaloosa Hyundai also fails to dispute that HMA offers the Accelerate and Brand Ambassador programs to all Hyundai dealers in Alabama, and GMA offers the Keystone program to all Genesis dealers in Alabama.  (Defs.' SUMF ¶ 44).

Tuscaloosa Hyundai moves the goal posts by arguing that, despite having the same offer to participate, it had less of an "opportunity" to earn the facility incentives

than other dealers.  (*See* Opp'n at 32).  But Tuscaloosa Hyundai fails to cite any evidence demonstrating that it was harder for it to participate in the facility programs compared to other dealers.  That Tuscaloosa Hyundai built its facility in 2016 does not distinguish it for this purpose because *every* Hyundai dealer needs to invest in an upgraded Hyundai facility to qualify under Accelerate.  In addition, *every* dual Hyundai and Genesis dealer needs to separate the brands if it wants to earn facility incentives under Accelerate, Keystone and Brand Ambassador.

The only dealer Tuscaloosa Hyundai identifies in comparison is Hyundai of Jasper, a dealer with no Genesis franchise.  It claims unfairness because Jasper would "not have to spend anything to separate Hyundai and Genesis," but that does not mean the opportunity it received was any different.  After all, Hyundai-only dealers like Jasper do not have to separate Hyundai and Genesis because those dealers made a business decision to turn down Defendants' earlier offer of a potentially lucrative Genesis franchise. That same choice was equally available to all dealers, and Tuscaloosa Hyundai should not be heard to complain about others having it easier based on its own decision to accept a profitable Genesis franchise.

Nor can Tuscaloosa Hyundai so easily dismiss the fact that no Alabama Genesis dealers qualify for facility incentives.  Tuscaloosa Hyundai points to dealers in other states who qualify for the incentives, but fails to explain why those dealers are relevant to the inquiry under Alabama law.  Alabama follows the general rule

14

that a state statute should not be given extraterritorial effect absent a clear statement to the contrary.  *See Lide v. Parker's Ex'r*, 60 Ala. 165, 169 (1877) ("It cannot be presumed that the legislature meant to give to its enactment, if it could do so, an extra-territorial operation[.]").  Section 8-20-4(3)(g) does not expressly apply to price disparities between Alabama dealers and out-of-state dealers and thus should not be interpreted to do so.

Courts elsewhere have applied this rule of statutory construction to geographically limit the application and effects of state statutes governing automotive franchises.  *See e.g., Carolina Trucks & Equip., Inc. v. Volvo Trucks of N.A., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007) (refusing to interpret South Carolina's prohibition on direct sales by an auto manufacturer to govern sales to South Carolina residents taking place outside the state).  And with good reason, as applying such statutes nationwide would implicate serious Constitutional concerns under the Commerce Clause.  *Id.*, 492 F.3d at 489-90.  Because Alabama law cannot govern the legality of Defendants' incentive programs in other states or dictate the prices dealers in those states pay for vehicles, Tuscaloosa Hyundai cannot rely on out-of-state dealers to establish its Alabama price discrimination claim.

## D.    Tuscaloosa Hyundai Misconstrues the Intracorporate Conspiracy Doctrine.

Tuscaloosa Hyundai does not dispute the general proposition that the intracorporate conspiracy doctrine applies to bar conspiracy claims between a parent

company and its subsidiary.  Instead, it argues (based on dicta) that the doctrine is limited to situations where a corporation's liability is predicated on a theory of *respondeat superior*.  (Opp'n at 34) (quoting *Southern Field Maintenance & Fabrication LLC v. Killough*, 2018 WL 4701782, at \*9 (M.D. Ala. Oct. 1, 2018)). Tuscaloosa Hyundai, however, cites no cases applying such a rule to allow a conspiracy claim to proceed against a LLC and its members.  As the court in *Southern Field Maintenance* recognized, the doctrine has been expanded over time and now applies to entities other than corporations. *Id.* at \*9.  This is consistent with the body of cases recognizing in various contexts that a parent entity cannot form a conspiracy with its wholly owned subsidiary.  *See e.g.*, *United States v. IASIS Healthcare LLC*, 2016 WL 6610675, at \*16 (D. Ariz. Nov. 9, 2016) (applying rule to bar conspiracy allegations against an LLC parent company and its subsidiary entities).  Because it is undisputed that GMA is a LLC and HMA is its sole member, they cannot form a conspiracy as a matter of law.[4]

Moreover, Tuscaloosa Hyundai's conspiracy allegations only relate to Brand Ambassador.  (Suppl. Compl., Dkt. 14, ¶ 110).  They have placed Rob Grafton at the center of the so-called conspiracy, and rely mainly on an email he sent saying that GMA would also be considering a similar program.  (Opp'n at 35).  But Grafton

---

[4] Tuscaloosa Hyundai cites unrelated trial testimony from Erwin Raphael, a former GMA executive who has not worked for HMA or GMA since 2021, prior to the launch of Brand Ambassador.  (Dkt. 30-32 at p. 16).  His testimony is thus irrelevant to the structure and operations of the two companies during the time when Brand Ambassador was developed and launched.

has a dual role for both HMA and GMA, (Dkt. 27-14, Grafton Dep. 6:24-7:13), which highlights the issue with a conspiracy claim under these circumstances, as Grafton cannot conspire with himself, or other employees of either company. *See Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) ("[A] corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.") (quotations omitted).

## E.     The AMVFA Does Not Authorize Punitive Damages.

As Tuscaloosa acknowledges, no provision of the AMVFA authorizes punitive damages for violations of the act.  *See* Ala. Code § 8-20-11 (establishing a civil cause of action for a plaintiff "to recover the damages sustained by him…"). The Court need not inquire any further.  Tuscaloosa Hyundai only alleges violations of the AMVFA,[5] and because the act does not provide for punitive damages, they are not recoverable here.  *See Treadwell Ford, Inc. v. Leek*, 133 So. 2d 24, 25 (Ala. 1961) ("Punitive damages are not recoverable as a matter of right except provided by statute."); *Cooley v. HMR of Alabama,* Inc., 259 F. Supp. 3d 1312, 1318 (N.D. Ala. 2017) ("[W]here a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies.") (internal quotations omitted).

---

[5] While Count 13 alleges a common law conspiracy among Defendants, it is premised on HMA's alleged direct liability for violations of the AMVFA with respect to Brand Ambassador.  (Suppl. Compl. ⁋ 110).  Tuscaloosa Hyundai does not offer any response to Defendants' arguments regarding the lack of punitive damages available for a conspiracy to violate a statute that does not otherwise allow recovery of such damages. (*See* Dkt. 26 at 27-28). It accordingly concedes the issue. *See Long-Lewis Sterling*, 2010 WL 11565177, at *4 (N.D. Ala. March 23, 2010).

Tuscaloosa Hyundai fails to cite any case allowing recovery of punitive damages for a statutory claim in the absence of a statute expressly authorizing such relief.

To avoid this result, Tuscaloosa Hyundai turns to a general statute, Ala. Code § 6-11-20(a), which by its express terms bars awards of punitive damages except in certain tort actions. Despite asserting no tort claims here, Tuscaloosa Hyundai contends the exception still applies because its AMVFA claims are "akin to a state law fraud claim." (Opp'n at 36).[6] But the exception in § 6-11-20(a) speaks only of actual "tort actions," not statutory claims that are merely "akin to" tort actions. Tuscaloosa Hyundai cites no authority adopting such an expansive reading of the statute, and the Court should reject its efforts to adopt one here.

## CONCLUSION

For all these reasons, summary judgment is due to be granted in Defendants' favor on all counts and on Plaintiff's request for punitive damages.

---

[6] Moreover, Tuscaloosa Hyundai's contention that its statutory claims are akin to common law fraud are dubious at best. Tuscaloosa does not allege—and has no evidence of—any intentional misrepresentation of fact by Defendants, let alone a misrepresentation that it reasonably relied on to its detriment.

Dated:  January 30, 2023                    Respectfully submitted,

                                            */s/ John A. Smyth*
                                            John A. Smyth, III
                                            Bryan Coleman
                                            Bo Bledsoe
                                            MAYNARD, COOPER & GALE, P.C.
                                            1901 Sixth Avenue North
                                            Suite 1700
                                            Birmingham, AL 35203-2618
                                            Telephone: 205.254.1000
                                            jsmyth@maynardcooper.com
                                            bcoleman@maynardcooper.com
                                            bbledsoe@maynardcooper.com

                                            Ryan L. Ford (admitted *pro hac vice*)
                                            HOGAN LOVELLS US LLP
                                            555 Thirteenth St. NW
                                            Washington, D.C. 20004
                                            Telephone: 202.637.5600
                                            Fax: 202.637.5910
                                            ryan.ford@hoganlovells.com

                                            Kevin M. D'Olivo (admitted *pro hac vice*)
                                            HOGAN LOVELLS US LLP
                                            8350 Broad Street, 17th Floor
                                            Tysons, VA 22102
                                            Tel.: (703) 610-6152
                                            Fax: (703)610-6200
                                            kevin.dolivo@hoganlovells.com

                                            *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following by Court's CM/ECF system on this 30th day of January, 2023:

**Attorneys for Plaintiff**

Jeffrey L. Ingram, Esq.
David A. Butler, Esq.
INGRAM, KALUPA & BUTLER, P.C.
203 Kenimer Avenue
Suite 100
Trussville, AL 35173
jeff@ikblawyers.com
david@ikblawyers.com


*/s/ Bo Bledsoe*_____
Of Counsel